IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 16, 2005

## STATE OF TENNESSEE v. RONALD LYNN CHATMAN

**Direct Appeal from the Circuit Court for Robertson County**
**No. 01-0494     Michael R. Jones, Judge**

—————————

**No. M2003-00806-CCA-R3-CD - Filed April 19, 2005**

—————————

Defendant, Ronald Lynn Chatman, was indicted for the offense of especially aggravated kidnapping, a Class A felony. Following a jury trial, Defendant was convicted of the lesser included offense of facilitation of especially aggravated kidnapping, a Class B felony. The trial court sentenced Defendant to nine years imprisonment as a Range I, standard offender. In his appeal, Defendant challenges the sufficiency of the convicting evidence, and argues that the trial court erred in not granting Defendant's request for a probated sentence. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which GARY R. WADE, P.J., joined. DAVID G. HAYES, J., filed a concurring opinion.

Joe R. Johnson, Springfield, Tennessee, for the appellant, Ronald L. Chatman.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

## I. Background

Michael Dowlen stopped by Marian Dishman's house for a few minutes on October 10, 2001. He left his two-year-old daughter, Asianna, in her car seat. Mr. Dowlen said he came out of Mr. Dishman's house no more than sixty seconds later, and saw a man running down the street with Asianna in his arms. Mr. Dowlen chased the man to a gray Oldsmobile. The man got into the car with Asianna while Mr. Dowlen beat on the car's trunk with his hands. As the car pulled out, one of the passengers yelled, "we want some money, n____."

A neighbor told Mr. Dowlen that the Oldsmobile belonged to Defendant. Mr. Dowlen and Mr. Dishman left in their respective cars to look for the Oldsmobile. After unsuccessfully searching for fifteen or twenty minutes, the men returned to Mr. Dishman's house to call the police. Marian Rainey, another visitor at Mr. Dishman's house, told Mr. Dowlen that "they" had been calling while the two men were gone. The telephone was ringing when Mr. Dowlen entered the home. The caller told him to bring $4,000 to the James Ralph Apartments if he wanted to see his baby. The caller then lowered the amount to $2,000, and instructed Mr. Dowlen to leave the money on the stoop of the first apartment. Mr. Dowlen said that he did not recognize the caller's voice.

Mr. Dowlen drove to the apartment building even though he did not have the requisite amount of money with him. A woman was standing in the street holding his daughter. A police officer was also at the scene. Mr. Dowlen said that he found Asianna approximately thirty minutes after she was abducted. He later learned that he and Defendant were related on Defendant's father's side.

On cross-examination, Mr. Dowlen insisted that someone inside the car told him that the men wanted money even though he had initially told the police that the man who was carrying Asianna was the one who demanded money. Mr. Dowlen said that Defendant was not the person who grabbed Asianna out of his car.

Mr. Dishman confirmed Mr. Dowlen's recital of the sequence of events that afternoon, except that he said Mr. Dowlen was in his house around ten minutes. Mr. Dishman said that he knew Defendant, and Defendant called Mr. Dishman on his cell phone after Asianna was found. Mr. Dishman admitted that he did not tell the police about the phone call.

Beverly Baker spotted Asianna standing in the middle of the street by herself. She picked the child up and brought her to the sidewalk. Someone drove by and said the child had been kidnapped from Jarrett Drive. Ms. Baker's daughter called the police. Mr. Dowlen arrived shortly after the police.

Tameka Chatman, Defendant's cousin, said that Defendant, Damus Hudson, Marcus Wilson and Brian Dunn drove up in Defendant's car around 1:00 p.m. on October 10, 2001. Defendant parked the car at the back of the house. Ms. Chatman was talking to her grandmother on the telephone when Defendant arrived. Her grandmother had heard about the kidnapping on her police scanner. Ms. Chatman said that she asked Defendant what was happening, and he neither admitted nor denied that he was involved in the kidnapping.

Officer James Patty with the Springfield Police Department said that he responded to the call from Ms. Baker's daughter. He said that Mr. Dowlen was hysterical when he arrived at the apartments. Officer Patty allowed Mr. Dowlen to go to his home to give a statement. He said that Mr. Dowlen described the kidnapper as a light-skinned, thin, African-American male, and that it was the kidnapper who made the statement about wanting money.

Marcus Wilson was a passenger in Defendant's car that afternoon. He testified that the four men went to Jarrett Drive to purchase some marijuana. He and Mr. Hudson got out of the car to make the purchase. Mr. Wilson said that after they returned to the car, Defendant started to pull away and then stopped the car. Defendant then told Mr. Dunn to grab the child. Mr. Dunn got out of the car, ran to Mr. Dowlen's car, grabbed Asianna, and returned to Defendant's car. Mr. Wilson said a man ran after Mr. Hudson. Mr. Wilson admitted that someone in the front seat yelled out the window that they wanted money, but he did not know if that person was Defendant or Mr. Hudson. Mr. Wilson said that Defendant drove to Ms. Chatman's house, and the four men separated. Mr. Wilson said that he did not know a kidnapping was planned.

Mr. Wilson said that Defendant called him about three days after the incident and threatened to knock out his front teeth if Mr. Wilson testified. Mr. Wilson said that on October 13, 2001, Defendant's cousin, Bobby Wayne Dowlen, beat him up.

On cross-examination, Mr. Wilson agreed that he did not give a statement to the police until after he was arrested on the charge of especially aggravated kidnapping. Mr. Wilson said that his first statement was not accurate. Mr. Wilson agreed that he became aware at some point during the interview that the police were focusing on Defendant as a suspect rather than him. Mr. Wilson then told the police that Defendant told Mr. Dunn to kidnap the child. Mr. Wilson said that Defendant was shaking his head as he drove away after Mr. Dunn brought the child back to the car.

## II. Sufficiency of the Evidence

In challenging the sufficiency of the evidence, Defendant highlights the inconsistencies in Mr. Wilson's and Mr. Dowlen's testimony, and argues that there was no evidence that Defendant acted knowingly during the commission of the offense.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of facilitation of especially aggravated kidnapping. "Before an accused can be convicted of the facilitation of a felony, the State must prove beyond a reasonable doubt that the accused (a) knew another person was going to commit a specified felony and (b) knowingly furnished substantial assistance in the commission of the felony although the accused did not possess the requisite intent to be guilty of the felony." *State v. Parker*, 932 S.W.2d 945, 950-51 (Tenn. Crim. App. 1996) (citing Tenn. Code Ann. § 39-11-403(a)).

There was no dispute that Defendant was driving the car on the afternoon that the offense was committed. Defendant started to pull out after the drug purchase was completed and then stopped. Mr. Wilson said that Defendant told Mr. Dunn to grab the child who had been left alone in a car parked in front of Mr. Dishman's house. Mr. Dishman said that he and Defendant knew one another. Defendant did not make any attempt to drive away before Mr. Dunn got back in the car with Asianna. Defendant drove away with Asianna despite Mr. Dowlen's frantic attempts to stop the car. Defendant drove to his cousin's house and parked the car in the back yard. He and the other four men then left on foot.

Viewing the evidence in a light most favorable to the State, we conclude that the evidence is sufficient for a rational trier of fact to find that Defendant knew that Mr. Dunn was going to kidnap Asianna and that Defendant provided substantial assistance during the commission of the kidnapping. This Court has previously found that a person who drives another to the scene of the crime, waits while the other person commits the crime, and then provides the means of escape, has knowingly provided assistance substantial enough to support a facilitation conviction. *See State v. Harris*, 30 S.W.3d 345, 354 (Tenn. Crim. App. 1999); *State v. Hayes*, 7 S.W.3d 52, 57 (Tenn. Crim. App. 1999).

There were, as Defendant points out, significant inconsistencies in Mr. Wilson's testimony, and, to a certain extent, in Mr. Dowlen's testimony. "All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues [however] are resolved by the trier of fact." *State v. Micken,* 123 S.W.3d 355, 387 (Tenn. Crim. App. 2003). By its verdict, the jury resolved those conflicts in favor of the State. *Id.* (quoting *State v. Grace*, 493 S.W. 2d 474, 476 (Tenn. 1973)). Defendant is not entitled to relief on this issue.

## III. Sentencing Issues

Although Defendant does not specifically challenge the trial court's application of enhancement and mitigating factors in determining the length of his sentence, Defendant argues that the trial court should have granted him a probated sentence because of his youth. Defendant is not entitled to a presumption that he is a favorable candidate for probation because he was convicted of a Class B felony. Tenn. Code Ann. § 40-35-102(6). Defendant was, however, *potentially* eligible for probation because the sentencing range for a Class B felony is eight to twelve years, and a defendant is eligible for probation if the sentence actually imposed is eight years or less. *Id.* §§ 40-35-112(a)(2); 40-35-303(a). The trial court imposed a nine year sentence. Consequently, in order

for Defendant to prevail on his argument, we must first determine that the trial court erred in determining the length of Defendant's sentence.

At his sentencing hearing, Defendant testified that he was nineteen years old when he committed the current offenses. Although he left high school after the eleventh grade, Defendant said that he had finished the required courses for a G.E.D exam. Defendant said that he had been employed one time, but the job lasted only a few days. Defendant admitted that he had several juvenile adjudications which included resisting arrest, assault, theft, vandalism and aggravated robbery. Defendant said that he had been placed on house arrest twice as a juvenile, and then sent to a juvenile detention facility on two different occasions. Defendant believed that each time he had spent about six months in the facility. The pre-sentencing report showed that Defendant was arrested for theft over $500, automobile burglary, and fraudulent use of a credit card in Sumner County prior to the commission of the current offenses, but the charges were still pending at the time the pre-sentencing report was prepared. Defendant said that between the preparation of the pre-sentencing report and the sentencing hearing, he had completed a sentence of eleven months, twenty-nine days for these offenses indicating that Defendant had at least been convicted of a misdemeanor as a result of the arrest in Sumner County.

Defendant said that his life had changed direction, and he asked the court to place him on probation so that he could be with his family. Defendant apologized for his conduct.

At the conclusion of the sentencing hearing, the trial court found that enhancement factors (2) and (21) were applicable based on Defendant's adult conviction in Sumner County and the aggravated robbery offense he committed as a juvenile. Tenn Code Ann. § §40-35-114(2) and (21). As mitigating factors, the trial court considered Defendant's expression of remorse, the fact that he voluntarily surrendered to the police, and the release of the victim unharmed. *Id.* §§ 40-35-113(13) and 39-13-305(b)(2). The trial court found that the enhancement factors greatly outweighed the mitigating factors and sentenced Defendant to nine years' imprisonment.

When a defendant challenges the length, range, or manner of service of a sentence, this Court conducts a *de novo* review with a presumption that the determinations made by the trial court are correct. *Id.* § 40-35-401(d). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). "If the trial court applies inappropriate factors or otherwise fails to follow the 1989 Sentencing Act, the presumption of correctness falls." *State v. Shelton*, 854 S.W.2d 116, 123 (Tenn. Crim. App. 1992).

The Sentencing Commission Comments provide that the burden is on the defendant to show the impropriety of the sentence. Tenn. Code Ann. § 40-35-401, Sentencing Commission Comments. Our review requires an analysis of (1) the evidence, if any, received at the trial and sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments of counsel relative to sentencing alternatives; (4) the nature and characteristics of the offense; (5) any mitigating or enhancing factors; (6) any statements made by the defendant in his own behalf; and (7) the

defendant's potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, and -210; *State v. Smith*, 735 S.W.2d 859, 863 (Tenn. Crim. App. 1987).

As a Range I offender convicted of a Class B felony, Defendant is subject to a sentence of between eight and twelve years. Tenn. Code Ann. § 40-35-112(a)(2). In calculating the sentence for a Class B felony conviction, the presumptive sentence is the minimum in the range if there are no enhancement or mitigating factors. *Id.* § 40-35-210(c). If there are enhancement but no mitigating factors, the trial court may set the sentence above the minimum, but still within the range. *Id.* § 40-35-201(d). If both enhancing and mitigating factors are present, the trial court must start at the presumptive minimum, enhance the sentence within the range as appropriate for the enhancing factors, and then reduce the sentence as appropriate for the mitigating factors. *Id.* § 40-35-210(e).

Although not cited by Defendant in his brief, we must also consider the impact of the Supreme Court's recent decision in *Blakely v. Washington*, 542 U.S. ___, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), which calls into question certain aspects of our sentencing scheme, in conducting our review. In *Blakely*, the United States Supreme Court concluded that "'[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 124 S. Ct. at 2536 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S. Ct. 2348, 2362-63, 147 L. Ed. 2d 435 (2000)). The *Blakely* court clarified that the relevant "statutory maximum" for sentencing purposes "is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." *Blakely*, 124 S. Ct. at 2537.

*Blakely*, however, does not preclude a sentencing court's consideration of a defendant's prior convictions as an enhancement factor in determining the length of the defendant's sentence. *Id.* at 2536. As the *Apprendi* court observed, prior convictions do not relate to the commission of the offense for which the defendant is being sentenced, and presumably the prior convictions "had been entered pursuant to proceedings with substantial safeguards of their own." *Apprendi*, 530 U.S. at 488, 120 S. Ct. at 2361-62. There is enough evidence in the record based on Defendant's testimony at the sentencing hearing to support a finding that he at least had one prior conviction for a misdemeanor before committing the current offenses in October. Based on our review of the record, application of enhancement factor (2), Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range, is appropriate. *See* Tenn. Code Ann. § 40-35-114(2).

The trial court also found that enhancement factor (21) was appropriate because Defendant had committed a delinquent act as a juvenile that would constitute a felony if committed as an adult, namely aggravated robbery. *See id.* § 40-35-114(21). Juvenile adjudications, however, differ fundamentally from criminal convictions. "The purpose of juvenile justice laws is to 'remove from children committing delinquent acts the taint of criminality and the consequences of criminal behavior.'" *State v. Christopher Kirkendall*, No. W2004-00784-CCA-R3-CD, 2004 WL 2083760 (Tenn. Crim. App., at Jackson, Sept. 16, 2004), *application for perm. to appeal granted* March 7, 2005 (quoting Tenn. Code Ann. § 37-1-101). In addition, a juvenile adjudication is not considered

-6-

a criminal conviction. Tenn. Code Ann. § 37-1-133(a). This court has previously held that juvenile adjudications do not qualify as prior convictions under the rule established in *Apprendi* and *Blakely*. *See State v. Brandon Wallace*, No. W2003-01967-CCA-R3-CD, 2005 WL 195086, *10 (Tenn. Crim. App., at Jackson, Jan. 28, 2005); *State v. Recardo Dale*, No. W2003-02391-CCA-R3-CD, 2005 WL 94362, *6 (Tenn. Crim. App., at Jackson, Jan. 10, 2005), *application for perm. to appeal filed* (Tenn. Mar. 7, 2005). Thus, the trial court's consideration of enhancement factor (21) was inappropriate under *Blakely*.

Although we conclude that the trial court misapplied enhancement factor (21), this error does not necessarily lead to a reduction in the length of Defendant's sentence. *State v. Winfield*, 23 S.W.3d 279, 284 (Tenn. 2000). The trial court sentenced Defendant to nine years, or one year over the presumptive sentence of eight years for a Range I, standard offender, of a Class B felony. The *Blakley* ruling does not preclude the consideration of Defendant's prior criminal conviction in determining the length of his sentence. Based on the presence of one enhancement factor and the little weight accorded the mitigating factors by the trial court, we conclude that a sentence of nine years for Defendant's conviction of facilitation of especially aggravated kidnapping is appropriate. Because Defendant's sentence exceeds eight years, we need not further address his arguments concerning his eligibility for probation. *See* Tenn. Code Ann. § 40-35-303(a).

## CONCLUSION

Based on the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE